**Opinion filed March 12, 2009**



In The

# Eleventh Court of Appeals

———

### No. 11-07-00025-CV

———

## SUN-KEY OIL CO., INC., Appellant

### V.

## ERNEST CANNON AND MONCRIEF MINERALS PARTNERSHIP, L.P., Appellees

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause No. 27585**

### M E M O R A N D U M   O P I N I O N

Ernest Cannon and Moncrief Minerals Partnership, L.P., owned undivided mineral interests in a 352-acre tract of land.  A 1973 oil and gas lease covered the 352 acres.  Sun-Key Oil Co., Inc. operated the 352 acres as an assignee of the lease.  In this cause, Cannon and Moncrief alleged that the 1973 lease had terminated as a result of a total cessation of production after the primary term or, alternatively, a cessation of production in paying quantities after the primary term.  Therefore, Cannon and Moncrief each sought a declaratory judgment terminating the lease.  Moncrief moved

for partial summary judgment on its total cessation of production theory. The trial court entered an order granting Moncrief's motion and, based on its ruling on Moncrief's motion, entered a final judgment in favor of Cannon and Moncrief declaring that the lease had terminated. We affirm.

*Background Facts*

The 1973 lease covered a total of 6,518 acres, including the Parkey Ranch. The lease created eleven units within the 6,518 acres and provided that "each unit will be independent of the other units as though covered by a separate lease." The lease had a primary term of five years and a secondary term for "as long thereafter as oil or gas is produced therefrom, subject to the conditions as hereinafter provided." The lessee completed the Parkey Well No. 1 on one of the units covered by the lease. The well produced gas, and the lessee designated the well as the "Parkey Ranch Unit No. 1, Well No. 1" production unit covering 352 acres. This 352-acre production unit is the subject of this case.

Cannon filed this suit against Sun-Key on December 13, 2004. He alleged that he owned the surface estate and an undivided one-half mineral interest in the 352 acres. He also alleged that the lease had terminated as a result of a total cessation of production or a cessation of production in paying quantities from the Parkey Well No. 1 "between October 1995 and July 1997." During that time, D and N Natural Gas Operating Co., Inc. operated the unit as an assignee of the lease. In 1998, Sun-Key acquired D and N's interest in the lease and began operating the unit. Cannon also alleged that there had been a total cessation of production or a cessation of production in paying quantities during Sun-Key's operation of the unit. Based on the alleged lack of production, Cannon sought a declaratory judgment that the lease had terminated.

Cannon had filed an earlier suit against Sun-Key on September 28, 1998. In the earlier suit, Cannon sought a declaratory judgment that the lease had terminated based on allegations that were virtually identical to some of his allegations in this cause. For example, Cannon alleged in the earlier suit that there had been a total cessation of production or a cessation of production in paying quantities "between October 1995 and July 1997." Cannon's earlier suit proceeded to a jury trial. Following the jury trial, on July 3, 2002, the trial court entered a take-nothing judgment against Cannon on his declaratory judgment claim. Cannon appealed the trial court's judgment to this court,

and we affirmed the judgment. *Cannon v. Sun-Key Oil Co.*, 117 S.W.3d 416 (Tex. App.—Eastland 2003, pet. denied).

Sun-Key raised the affirmative defense of res judicata in this cause based on the trial court's judgment in the earlier suit. Sun-Key moved for summary judgment on the ground that res judicata barred Cannon's claims in this cause. On July 30, 2005, the trial court entered an order granting summary judgment "to the extent that the affirmative defense of res judicata bar[red] all claims and causes of action of [Cannon] during all periods of time prior to July 3, 2002."

On November 21, 2005, Moncrief intervened in this cause. Moncrief alleged that it owned an undivided 20% mineral interest in the subject 352 acres. Moncrief's allegations and claims were identical in many respects to Cannon's allegations and claims. Like Cannon, Moncrief alleged that the lease had terminated as a result of a total cessation of production or a cessation of production in paying quantities "between October 1995 and July 1997." Moncrief sought a declaratory judgment that the lease had terminated.

Sun-Key answered Moncrief's plea in intervention. In its answer, Sun-Key raised affirmative defenses of res judicata, collateral estoppel, repudiation, and adverse possession under the three- and five-year statutes.[1]

Moncrief filed a motion for partial summary judgment on its total cessation of production theory. In its motion, Moncrief asserted that the lease had terminated "due to total cessation of production for a period of 20 months from November 1995 to June 1997." Sun-Key did not file a response to Moncrief's motion. Instead, Sun-Key filed a motion for partial summary judgment against Moncrief on its adverse possession claims. Moncrief filed a response to Sun-Key's motion. Sun-Key also filed a no-evidence motion for summary judgment against Cannon. In the motion, Sun-Key asserted that there was no evidence that a total cessation of production or that a cessation of production in paying quantities had occurred on or after July 3, 2002. Cannon filed a response to Sun-Key's no-evidence motion.

On August 5, 2006, the trial court entered orders (1) granting Moncrief's motion for partial summary judgment, (2) denying Sun-Key's motion for partial summary judgment against Moncrief,

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.024-.025 (Vernon 2002).

and (3) denying Sun-Key's no-evidence motion for summary judgment against Cannon. On January 18, 2007, the trial court entered a final judgment. In the judgment, the trial court, among other things, declared that the 1973 lease and the 1979 Parkey Ranch Unit No. 1, Well No. 1, Designation of Production Unit "constitute[d] a cloud on the title of [Cannon] and [Moncrief] as to the lands described in such recorded instruments and that the same ha[d] terminated and [were] void and of no further force and effect." The trial court stated in the judgment that "[t]his judgment finally disposes of all parties and claims in this cause and is a Final Judgment."

*Arguments Presented*

Sun-Key presents three points of error. In its first point, Sun-Key asserts that the trial court erred in denying its motion for partial summary judgment against Moncrief based on its affirmative defenses of adverse possession under the three- and five-year statutes. In its second point, Sun-Key asserts that the trial court erred in granting partial summary judgment in favor of Moncrief terminating the lease because res judicata, collateral estoppel, and the three- and five-year adverse possession statutes barred Moncrief's claim. In its third point, Sun-Key asserts that the trial court erred in denying its no-evidence motion for summary judgment against Cannon.

*Moncrief's Total Cessation of Production Claim*

Moncrief moved for a traditional summary judgment on its total cessation of production claim. A trial court must grant a traditional motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). If the movant's summary judgment evidence facially establishes a right to summary judgment, then the burden shifts to the nonmovant to raise an issue of fact on one of the elements of the movant's claim or on each element of an affirmative defense. *Lunsford Consulting Group, Inc. v. Crescent Real Estate Funding VIII, L.P.*, 77 S.W.3d 473, 475 (Tex. App.—Houston [1st Dist.] 2002, no pet.). When reviewing a traditional summary judgment, the appellate court considers all the evidence and takes as true evidence favorable to the nonmovant. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). The appellate court "must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented" and may not ignore "undisputed

4

evidence in the record that cannot be disregarded." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755, 757 (Tex. 2007).

To defeat summary judgment by raising an affirmative defense, the nonmovant must do more than just plead the affirmative defense. *Am. Petrofina, Inc. v. Allen*, 887 S.W.2d 829, 830 (Tex. 1994); *Lunsford Consulting*, 77 S.W.3d at 475-76. The nonmovant must present summary judgment evidence that raises a fact issue on each element of the defense. *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Lunsford Consulting*, 77 S.W.3d at 476.

A "total cessation of production" occurs when a well that has been producing gas ceases to produce any quantity of gas. *Cannon*, 117 S.W.3d at 421. Moncrief presented summary judgment evidence that the Parkey Well No. 1 did not produce gas from November 1995 to June 1997. Moncrief's summary judgment evidence facially established its right to summary judgment that the lease had terminated as a result of a total cessation of production. The summary judgment burden shifted to Sun-Key to raise an issue of fact on one of the elements of Moncrief's claim or on each element of an affirmative defense. *Lunsford Consulting*, 77 S.W.3d at 475.

On appeal, Sun-Key argues that the trial court erred in granting Moncrief's motion for partial summary judgment because res judicata, collateral estoppel, and the three- and five-year adverse possession statutes barred Moncrief's claim. Sun-Key pleaded these affirmative defenses in response to Moncrief's plea in intervention. However, Sun-Key did not file a response to Moncrief's motion for partial summary judgment and, therefore, did not present summary judgment evidence in support of its affirmative defenses. Sun-Key failed to meet its summary judgment burden of raising a fact issue on each element of an affirmative defense.

The trial court did not err in granting Moncrief's motion for partial summary judgment. We overrule Sun-Key's second point of error. Because Moncrief met its summary judgment burden of establishing a total cessation of production, the trial court did not err in entering a declaratory judgment in favor of Moncrief that the lease had terminated. In the final judgment, the trial court also entered a declaratory judgment in favor of Cannon that the lease had terminated. Sun-Key has not raised an appellate issue attacking the declaratory judgment in favor of Cannon. Therefore, we must affirm the declaratory judgment in favor of Cannon. *Jacobs v. Satterwhite*, 65 S.W.3d 653, 655-56 (Tex. 2001).

*Sun-Key's Adverse Possession Affirmative Defenses*

Sun-Key moved for traditional summary judgment against Moncrief on its adverse possession affirmative defenses. Sun-Key argues that it acquired title to a leasehold interest under the three- and five-year adverse possession statutes. A defendant is entitled to summary judgment if it establishes an affirmative defense as a matter of law. *Am. Tobacco Co.*, 951 S.W.2d at 425; *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

To acquire title under a statute of limitations, the statute's requirements must be met. *Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 193 (Tex. 2003). The three-year statute provides that "[a] person must bring suit to recover real property held by another in peaceable and adverse possession under title or color of title not later than three years after the day the cause of action accrues." Section 16.024. The five-year statute provides as follows:

> (a) A person must bring suit not later than five years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who:
>
> (1) cultivates, uses, or enjoys the property;
>
> (2) pays applicable taxes on the property; and
>
> (3) claims the property under a duly registered deed.

Section 16.025(a). "Adverse possession" is defined as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1) (Vernon 2002). "Peaceable possession" is defined as "possession of real property that is continuous and is not interrupted by an adverse suit to recover the property." TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(3) (Vernon 2002).

One seeking to establish title to land by virtue of the statute of limitations has the burden of establishing all the required elements. *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990). The question of adverse possession is normally a question of fact, so only in rare circumstances is a court justified in holding that adverse possession has been established as a matter of law. *Id.* at 646; *Harlow v. Giles*, 132 S.W.3d 641, 647 (Tex. App.—Eastland 2004, pet. denied). To establish

adverse possession as a matter of law, the claimant must show by undisputed evidence that it adversely possessed the property continuously for the statutory period. *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985). The claimant must submit undisputed and conclusive evidence of probative force on each essential element of adverse possession, and inferences are never indulged in its favor. *Id.*

Sun-Key presented an affidavit from L.H. Jones, its president, in support of its motion for summary judgment. Jones stated in the affidavit (1) that Sun-Key acquired its interest in the subject lease on July 8, 1998; (2) that he was familiar with the operations on the Parkey No. 1 Gas Unit; (3) that Sun-Key had continuously conducted operations on the subject property since acquiring its interest; (4) that he had conducted or supervised leasehold operations; (5) that the operations had been conducted "on an almost daily basis"; (6) that no cessation of production had occurred on the Parkey No. 1 Unit after Sun-Key acquired its interests; (7) that royalties "due and payable to the Lessors" had been timely paid or had been suspended while waiting for particular interest owners to execute division orders; (8) that Sun-Key, as lease operator, had placed "the appropriate signs required by the Railroad Commission of Texas" on the premises; (9) that Sun-Key's operations had been "open, notorious, and exclusive"; and (10) that no other entity had conducted such operations on the premises. Jones also stated that Sun-Key had paid the applicable taxes on the property. Jones attached to his affidavit true and correct copies of payment receipts showing payment of taxes for the years 1998 through 2005.

Jones's affidavit provided some evidence that Sun-Key had conducted some operations on the premises. However, some of the statements in Jones's affidavit were conclusory in nature and were not supported by factual detail. Sun-Key had the summary judgment burden of establishing "adverse possession" as that term is defined in Section 16.021(1) of the Civil Practice and Remedies Code. Sun-Key's summary judgment evidence was insufficient to prove "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person" as a matter of law. In contrast, the supreme court in *Pool* held that the evidence presented at trial was sufficient to establish an open, notorious, and hostile use of the property as a matter of law. 124 S.W.3d at 197-99. This cause is distinguishable from *Pool*. In *Pool*, the adverse possession claimants presented detailed evidence establishing the

7

nature of their use of the property and the elements of their adverse possession claims. The summary judgment record in this cause lacks the type of evidence that the adverse possession claimants presented in *Pool*.

Because Sun-Key failed to prove "adverse possession" under Section 16.021(1) as a matter of law, the trial court did not err in denying Sun-Key's motion for partial summary judgment against Moncrief. We overrule Sun-Key's first point. We need not consider whether Sun-Key established the other elements of its adverse possession claims. TEX. R. APP. P. 47.1.

*Sun-Key's No-Evidence Motion for Summary Judgment*

Sun-Key moved for summary judgment against Cannon on the ground that there was no evidence that a total cessation of production or that a cessation of production in paying quantities had occurred on or after July 3, 2002. In its third point, Sun-Key asserts that the trial court erred in denying its no-evidence motion for summary judgment. Sun-Key's third point is moot in light of the trial court's unchallenged declaratory judgment in favor of Cannon terminating the lease. Therefore, we need not address Sun-Key's third point. Rule 47.1.

*This Court's Ruling*

We affirm the judgment of the trial court.


TERRY McCALL

JUSTICE


March 12, 2009

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

8