

# NUMBER 13-22-00075-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**DUTY FREE CITY USA, LLC**
**A/K/A DUTY FREE CITY, LLC,**                                    **Appellant,**

**v.**

**ALONZO CANTU,**                                                **Appellee.**

---

## On appeal from the 197th District Court
## of Cameron County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Tijerina, Silva, and Peña
### Memorandum Opinion by Justice Tijerina

Appellant Duty Free City, USA, LLC a/k/a Duty Free City, LLC (Duty Free) appeals

the trial court's granting of summary judgment in favor of appellee Alonzo Cantu. By two

issues, Duty Free asserts that the trial court erred in granting Cantu's: (1) no-evidence

summary judgment motion on Duty Free's counterclaims, and (2) traditional summary judgment motion on Cantu's claims for breach of contract. We affirm.

## I.    BACKGROUND

On March 23, 2015, Duty Free, as tenant, entered into a commercial lease with Thomas H. Sweeney III, as landlord, for the purposes of operating a duty-free store. The term of the lease was for sixty months, ending on June 22, 2020. Under the terms of the lease, on the first of each month, Duty Free paid Sweeney $2,650 for monthly rent. Duty Free further agreed to pay a late charge of $225 if rent was not paid within six days of the due date. The lease provided that changes would be in writing.

Thereafter, Sweeney sold his rights under the lease to Cantu in November 2017. Duty Free continued to make payments to Cantu under the lease until 2018. According to Cantu, Duty Free defaulted on the lease by failing to make monthly rental payments in September, October, November, and December of 2018. In October 2019, Cantu effectuated a "lock-out" of Duty Free from the leased premises. Duty Free obtained a writ of re-entry to the property and removed its personal property from the leased premises.

On March 27, 2020, Cantu filed suit against Duty Free, asserting breach of contract and requesting attorney's fees. Duty Free responded stating that in 2018, "the parties negotiated a reduction in rent because of [a] changing business environment." Duty Free asserted the defenses of equitable estoppel, promissory estoppel, and novation. Duty Free further asserted that Cantu failed to mitigate damages because he made no attempt to re-lease the premises. Lastly, Duty Free asserted the defense of impossibility, asserting that Cantu's lock-out of the premises and the "Stay at Home" COVID orders

2

made it impossible for it to conduct business on the premises. Duty Free counterclaimed for breach of contract, asserting the lockout was not done in accordance with the terms of the lease.

Cantu filed a joint traditional and no-evidence motion for summary judgment. Cantu stated that Duty Free defaulted on the lease by failing to make monthly payments as they became due and failed to pay late charges. Cantu asserted Duty Free paid no rent for the months of September 2018, October 2018, November 2018, and December 2018, yet Duty Free occupied the premises until November 21, 2019, and thereafter abandoned the lease. Thus, according to Cantu, Duty Free owed $38,770 for past due rental payments, rental payments owing through the end of the lease term, and late charges. To support his traditional motion for summary judgment, Cantu attached the commercial lease, the lock-out notice he posted on the property, rental payments made by Duty Free, a statement of rent due, an affidavit of the onsite manager Odette Castillo, and Duty Free's discovery responses. Cantu further asserted he was entitled to a no-evidence summary judgment on Duty Free's breach of contract claim because there was no evidence that Duty Free tendered performance under the lease or that Cantu breached or caused damages.

Duty Free responded to the motion for combined summary judgment asserting that the parties negotiated a rent reduction to $2,223 per month and that Cantu did not comply with the notice requirements as set out in the lease when Cantu locked out Duty Free. Therefore, according to Duty Free, Cantu breached the contract rather than Duty Free. Duty Free attached a series of e-mails reflecting negotiations on rent, the lock-out notice

3

Cantu posted, Duty Free's sworn application for a writ of re-entry, the executed writ of re-entry, and a chart with Duty Free's sales for the years 2018–19.

Cantu responded that he complied with the notice provisions of the property code and insisted that Duty Free provided no evidence of the elements of its breach of contract claim or damages. The trial court granted Cantu's joint traditional and no-evidence summary judgment motion, ordered that Cantu recover from Duty Free the amount of $38,770, attorney's fees, and pre-judgment and post-judgment interest. Duty Free filed a motion for new trial, which the trial court denied. This appeal followed.

## II.    STANDARD OF REVIEW

Cantu filed a combined no-evidence and traditional motion for summary judgment. *See* TEX. R. CIV. P. 166a(c), (i). We review both motions for summary judgment de novo. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We review no-evidence motions for summary judgment under the same legal sufficiency standard used to review a directed verdict. *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018). A party without the burden of proof at trial, after adequate time for discovery, may move for summary judgment because there is no-evidence of one or more essential elements of a claim or defense. *See* TEX. R. CIV. P. 166a(i). "In a no-evidence summary judgment, the movant must specifically state the elements as to which there is no evidence." *Macias v. Fiesta Mart, Inc.*, 988 S.W.2d 316 (Tex. App.—Houston [1st Dist.] 1999, no pet.). "The burden then shifts to the non[]movant to bring forth evidence that raises a fact issue on the challenged elements." *Id.* at 317. The trial court properly grants a no-evidence summary judgment if the respondent does not bring forth more than a

4

scintilla of probative evidence to raise a genuine issue of material fact. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "[M]ore than a scintilla exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Macias*, 988 S.W.2d at 317 (internal quotation marks omitted). Conversely, "[l]ess than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion." *Id.* (internal quotation marks omitted).

A traditional motion for summary judgment requires the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). Once a movant initially establishes a right to summary judgment on the issues expressly presented in the motion, the burden shifts to the nonmovant to present issues or evidence precluding summary judgment. *See* TEX. R. CIV. P. 166a(c). The nonmovant must either negate at least one of the essential elements of a cause of action or conclusively establish each element of an affirmative defense. *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). A plaintiff movant must conclusively prove all essential elements of its cause of action as a matter of law. *Draughon v. Johnson*, 631 S.W.3d 81, 87 (Tex. 2021). "The non[]movant has no burden to respond to a motion for summary judgment unless the movant conclusively establishes each element of its cause of action as a matter of law." *Wyrick v. Bus. Bank of Tex., N.A.*, 577 S.W.3d 336, 346 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (quoting *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222–23 (Tex. 1999)).

"To defeat summary judgment by raising an affirmative defense, the nonmovant must do more than just plead the affirmative defense." *Lunsford Consulting Group, Inc. v. Crescent Real Estate Funding VIII, L.P.*, 77 S.W.3d 473, 475 (Tex. App.—Houston [1st Dist.] 2002, no pet.). "The nonmovant must present summary judgment evidence that raises that defense." *Id.* at 476. In reviewing either type of summary judgment motion, we view the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013); *Valence Operating Co.*, 164 S.W.3d at 661. When the trial court's order does not specifically state the grounds for granting judgment, we must affirm the judgment "if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

### III.    NO-EVIDENCE SUMMARY JUDGMENT

Duty Free asserts the trial court erred in entering a no-evidence summary judgment on its counterclaim for breach of contract because "a valid contract exists, and more than a scintilla of evidence shows Duty Free performed or tendered performance as the parties agreed, Cantu breached by failing to perform as the contract required, and Duty Free sustained damages as a result."

To establish a breach of contract claim, the claimant must prove: (1) the existence of a valid contract; (2) performance or tendered performance by the claimant; (3) a breach by the defendant; and (4) the claimant incurred damages as a result of the breach. *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018). Cantu challenged

6

all elements. In its response to Cantu's no-evidence motion for summary judgment, Duty Free did not address the necessary elements for its breach of contract counterclaim or provide any evidence establishing that it performed or tendered performance under the lease by paying Cantu $2,650 per month as required by the lease. *See Holloway v. Tex. Elec. Util. Constr., Ltd.*, 282 S.W.3d 207, 212 (Tex. App.—Tyler 2009, no pet.) (holding that a no-evidence summary-judgment response was inadequate to raise fact issue when the party failed to discuss the challenged element anywhere in its response). In fact, Duty Free does not dispute that it failed to pay monthly installments in that amount. Instead, Duty Free asserts that the parties "negotiated, a rent reduction," and it made rental payments pursuant to this reduction.

However, the contract prohibited changes to it "except by written agreement." Duty Free did not provide a written agreement demonstrating that the parties agreed to a rent reduction. To the contrary, Duty Free provided a series of e-mails between it and Cantu discussing a *possible* rent reduction.

In the e-mails, the following exchange transpired: (1) Duty Free stated it would pay Cantu $10,600 for the last four months of 2018 (September, October, November, December), asked Cantu to "put this agreement in writing stating the rent reduction [is] effective January 2019 and forward," stated that "[o]nce we have this [agreement] in writing we'll issue the check and send to your attention"; (2) Cantu responded requesting documentation from Duty Free showing that its sales had dropped; (3) Duty Free responded, "I thought finally we had [a] resolution and we[']re moving forward. Why the back tracking?"; (4) Cantu requested further documentation for the past twelve months

7

showing that Duty Free's sales were decreasing; (5) Cantu informed Duty Free he would deposit "the checks received for January through April rent as partial payment for those months until [he] receive[s] the requested State Sales tax reports as proof of decreasing sales," and that "[o]nce those reports are received[,] we can proceed in assessing the sales decrease and make an amendment to the lease contract."

According to this evidence, the rent reduction was conditioned on Cantu receiving documentation showing Duty Free's sales decreasing for the last twelve months. Cantu further stated that once he received those sales reports, the parties could proceed in making "an amendment to the lease contract." Furthermore, Cantu explained the rent he received was being deposited as "partial payments" for January through April. Thus, although Duty Free states that the parties agreed to a rent reduction in 2019, the series of e-mails Duty Free provided do not account for a rent reduction, and Duty Free provided no evidence of a modification of the lease terms that was reduced to a written agreement as the lease required. Therefore, Duty Free failed to provide evidence that it tendered performance under the terms of the lease. *See Lunsford Consulting Group*, 77 S.W.3d at 475; *Menchaca*, 545 S.W.3d at 501. Accordingly, the trial court properly granted Cantu's no-evidence summary judgment on Duty Free's breach of contract counterclaim, and we overrule Duty Free's first issue.

## IV. TRADITIONAL SUMMARY JUDGMENT

By its second issue, Duty Free asserts that the trial court erred by granting Cantu's traditional motion for summary judgment on Cantu's breach of contract cause of action.

8

As summary judgment evidence, Cantu submitted a balance sheet containing invoices submitted to Duty Free, payment dates, check numbers, amounts paid, and balance due. According to the balance sheet, invoices dated October 1, 2018, through May 1, 2019, accrued with an outstanding balance of $23,850. The balance sheet further reflected that Duty Free submitted five check payments on May 3, 2019, in the amount of $2,223 each, resulting in an outstanding balance of $12,735. Duty Free continued to make check payments in the amount of $2,223 from June 2019 to October 2019. No further payments are reflected on the balance sheet. Cantu further submitted balance statements addressed to Duty Free reflecting balances from September 2018 to May 2020, referencing their correlated invoice numbers and the monthly past due amounts. Cantu attached each of Duty Free's checks, which Cantu endorsed. Furthermore, Cantu provided the lockout notice he displayed on the premises, which read: "PURSUANT TO TEXAS PROPERTY CODE SECTION 93.002 YOU MAY OBTAIN YOUR NEW KEY UPON THE PAYMENT OF ALL PAST DUE AMOUNTS. YOU CAN CALL ODETTE CASTILLO AT [] OR VISIT THE BUSINESS LOCATED AT [ADDRESS] DURING NORMAL BUSINESS HOURS TO OBTAIN THE NEW KEY." *See* TEX. PROP. CODE ANN. § 93.002(f) (providing that if a landlord changes the door lock of a delinquent tenant's premises for failure to pay rent, the landlord must place a written notice on the tenant's front door stating the address or phone number of the individual from which the new key may be obtained if the tenant pays the delinquent rent).

Based on this evidence, Cantu established that a valid contract existed, that Cantu performed under the lease, that Duty Free breached the lease, and that Cantu suffered

9

damages as a result. *See Sauceda v. GMAC Mortg Corp.*, 268 S.W.3d 135, 140 (Tex. App.—Corpus Christi–Edinburg, no pet.). Because Cantu's summary judgment evidence established his right to judgment as a matter of law, it became Duty Free's burden to raise a genuine issue of material fact as to an element of the breach of contract claim or to each element of an affirmative defense. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) ("If the party opposing a summary judgment relies on an affirmative defense, he must come forward with summary judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment.").

In response to Cantu's summary judgment, Duty Free raised the defenses of estoppel and impossibility.[1] Regarding estoppel, Duty Free asserted that Cantu was estopped "from making unverified claims that the notice of the lockout was legitimate or that the statutory provision of Chapter 93.002(h) [of the property code] do[es] not apply." *See* TEX. PROP. CODE ANN. § 93.002(g)(2). However, this argument—that Cantu is estopped from asserting the lockout was legitimate—relates to Duty Free's claim that Cantu breached the contract and that Duty Free was entitled to damages pursuant to § 93.002 of the property code. *See id.* We have already determined that Duty Free's breach of contract counterclaim against Cantu failed as a matter of law. Therefore, Duty Free did not establish the elements of this affirmative defense. *See id.*

Next, Duty Free raised the defense of impossibility: Cantu's "conduct in the lockout rendered [Duty Free's] performance under the contract impossible" because if the "shop

---

[1] We note that Duty Free's response to Cantu's summary judgment largely focused on its assertion that Cantu breached the contract and Duty Free was apparently thus entitled to damages pursuant to the lockout provision in § 93.002 of the property code. *See* TEX. PROP. CODE ANN. § 93.002(g)(2) (providing that a tenant may recover damages if the landlord violates this section).

is not open to the public, there are no sales and therefore no possibility of paying rent."

To have defeated summary judgment on Cantu's breach of contract claim, Duty Free was required to do more than just plead the affirmative defense. *See FP Stores, Inc. v. Tramontina US, Inc.*, 513 S.W.3d 684, 690 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). Duty Free was required to "come forward with evidence sufficient to raise a genuine issue of material fact on each element of its affirmative defense" of impossibility. *See id.* However, Duty Free has not specified either in its summary judgment response or its brief on appeal any element of impossibility. *See id.* In fact, Duty Free appears to wholly abandon this argument on appeal because it does not address the affirmative defense of impossibility. *See* Tex. R. App. P. 38.1(i) (providing that an appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Accordingly, Duty Free did not meet its summary judgment burden. *See id.* We overrule its second issue.

## V. CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Justice

Delivered and filed on the
30th day of November, 2023.

11